ON REHEARING
On rehearing the opinion of this court of December 21, 1988 is withdrawn and the following is substituted therefor.
This is an appeal from a decision of the Alabama State Health Planning and Development Agency (SHPDA).
The Lloyd Noland Foundation, Inc. (Lloyd Noland) filed an application with SHPDA in May 1984 seeking a certificate of need (CON) to construct a hospital in the Riverchase area of south Jefferson County. SHPDA granted the CON in May 1986. The Circuit Court of Jefferson County, Bessemer Division, reversed SHPDA's decision and vacated the granting of the CON. SHPDA and Lloyd Noland appealed. We reverse the circuit court and remand the case to that court for reinstatement of SHPDA's order granting the CON. *Page 56 
 I. History
In late 1981 and early 1982 six different groups filed applications with SHPDA, each seeking a CON to build a hospital in the Riverchase area. SHPDA consolidated the six applications and held a hearing to determine which applicant, if any, should be awarded a CON. In June 1982 SHPDA denied all six applications and found that each was inconsistent with the State Health Plan. The applicants appealed and the appeals were consolidated before the Circuit Court of Montgomery County. That court determined that SHPDA's decision was not arbitrary or capricious and affirmed the denial of all six applications in an order dated November 28, 1984.
Meanwhile, in May 1984, Lloyd Noland, which was not one of the six original applicants, filed an application for a CON to construct the Cahaba Medical Center and to relocate 157 of Lloyd Noland's existing hospital beds to that facility. Lloyd Noland proposed to build the new facility in the Riverchase area. In July 1984, on motion of one of the parties to the suit involving the other six applicants, the Circuit Court of Montgomery County enjoined SHPDA from considering Lloyd Noland's application pending a final decision on the other applications. By the time that decision was issued, the governor had issued Executive Order 28, imposing a moratorium on the consideration of CON applications except in cases of emergency.
On January 14, 1986 an amendment to Executive Order 28 effectively lifted the moratorium with respect to Lloyd Noland's application. SHPDA scheduled a public hearing on the reactivated application for May 13, 1986. Numerous interested entities appeared at the hearing to oppose the application, including four of the six hospitals whose applications had been denied previously. At the conclusion of the hearing the Certificate of Need Review Board of SHPDA approved the application and granted Lloyd Noland a CON.
Following the hearing, AMI Brookwood Medical Center (Brookwood) appealed to the Circuit Court of Jefferson County. Bessemer Carraway Medical Center, Baptist Medical Center, Shelby Medical Center and St. Vincent's Hospital filed separate appeals with the Circuit Court of Montgomery County. In July 1986 the Jefferson County Circuit Court consolidated the appeals. Thereafter, SHPDA petitioned this court for a writ of mandamus to require transfer of the case to Montgomery County on grounds of improper venue. This court denied the petition by opinion issued December 17, 1986. Ex parte State HealthPlanning Development Agency, 500 So.2d 1149 (Ala.Civ.App. 1986).
On September 23, 1987 the circuit court conducted an evidentiary hearing to gather evidence regarding procedural irregularities which allegedly occurred during SHPDA's consideration of the Lloyd Noland application. The circuit court held a second hearing on November 16, 1987 to allow final argument by all parties. On February 25, 1988 the circuit court issued a final order reversing SHPDA's decision and vacating the award of the CON. The court determined SHPDA's decision was clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record. § 41-22-20(k)(6), Code 1975 (Cum.Supp. 1988). After the circuit court denied SHPDA's motion for new trial, SHPDA and Lloyd Noland filed this appeal. All the parties have submitted well-reasoned and exceptionally helpful briefs to this court.
 II. Standard of Review
With regard to administrative decisions, we review the circuit court judgment without any presumption of correctness since that court was in no better position to review the agency decision than we are. State Health Planning ResourceDevelopment Administration v. Rivendell of Alabama, Inc.,469 So.2d 613 (Ala.Civ.App. 1985). The special competence of the agency lends great weight to its decision and that decision must be affirmed unless it is arbitrary or capricious or not made in compliance with applicable law. Rivendell, supra;Humana Medical Corp. v. State Health Planning DevelopmentAgency, 460 So.2d 1295 (Ala.Civ.App. 1984). Neither *Page 57 
this court nor the circuit court may substitute its judgment for that of the administrative agency. Alabama Medicaid Agencyv. Norred, 497 So.2d 176 (Ala.Civ.App. 1986); AlabamaDepartment of Public Health v. Perkins, 469 So.2d 651
(Ala.Civ.App. 1985).
 III. Standing
The first issue raised on appeal is whether Brookwood and the other hospitals (hereinafter collectively called "Brookwood") had standing to challenge SHPDA's decision on the Lloyd Noland application. We conclude that the hospitals do have standing based on the Alabama Administrative Procedure Act. §§ 41-22-1
through -27, Code 1975 (1988 Cum.Supp.).
SHPDA and Lloyd Noland contend that since Brookwood was neither an applicant nor a "competing applicant" in the instant case, Brookwood has no legal right to contest the decision. We disagree. In Ex parte State Health Planning DevelopmentAgency, 443 So.2d 1239 (Ala.Civ.App. 1983), we held that a hospital which was not an applicant or a competing applicant did not have standing to challenge a SHPDA decision under section 22-21-275, Code 1975. Section 22-21-275 provides for judicial review of adverse decisions made by SHPDA on CON applications. The case at bar is factually indistinguishable from Ex parte State Health Planning Development Agency.
However, the Alabama Administrative Procedure Act (AAPA), which went into effect after the decision of Ex parte SHPDA, supra, provides a basis for standing independent of section 22-21-275.
Section 41-22-25 outlines the applicability and proper construction of the AAPA. That section provides that the rights created by the AAPA shall be in addition to rights created by any other statute. It further provides that the AAPA shall take precedence over any other statute which diminishes the rights created by the AAPA, unless that statute expressly provides otherwise. In other words, if another statute grants additional rights to persons appearing before an administrative agency, that statute will supersede the AAPA. If, on the other hand, that statute purports to diminish the rights granted by the AAPA, the AAPA controls.
Applying this reasoning to the case at bar, we note that section 22-21-275(14) grants the right of judicial review of a SHPDA decision on a CON case to any "applicant". The AAPA provides that any "person" who has exhausted all available administrative remedies and who is aggrieved by a final decision of an administrative agency is entitled to judicial review of that decision. § 41-22-20(a), Code 1975 (1988 Cum.Supp.). Because the right of judicial review provided in the AAPA is broader than that created by section 22-21-275(14), the AAPA must control. This is not a situation where judicial review is "otherwise provided" so as to take the case out of the AAPA. § 41-22-20(b), Code 1975 (1988 Cum.Supp.). Although section 22-21-275(14) does "otherwise provide" for judicial review when sought by an applicant, that statute does not provide any sort of judicial review for persons who are aggrieved by the decision but are not applicants. See, MobileInfirmary Association v. Emfinger, 474 So.2d 731
(Ala.Civ.App. 1985).
To obtain standing under the AAPA, a person must meet three requirements. First, he must exhaust all administrative remedies; second, he must be involved in a "contested case"; and third, he must be aggrieved by a final decision of an administrative agency. § 41-22-20(a), Code 1975 (1988 Cum.Supp.). No one contests the fact that Brookwood meets the first two requirements. The vital question then is whether Brookwood was aggrieved by SHPDA's decision.
Significantly, the legislature did not limit judicial review under the AAPA to aggrieved "parties." Rather, it granted review to all "persons" aggrieved by an administrative decision. While Brookwood was not a "party" to the SHPDA hearing on Lloyd Noland's application, it certainly is a "person" within the meaning of section 41-22-20(a). *Page 58 
Brookwood asserts that it was aggrieved by SHPDA's decision herein in that construction of a new in-patient medical facility in the Riverchase area will significantly reduce the occupancy rate at its hospital, thereby causing economic injury. SHPDA regulations provide that when the probable service area of a new facility overlaps with that of an existing facility, a projected loss of utilization of five percent or more at the existing facility will be considered to have a detrimental effect on the existing facility. Rule410-1-6-.01(10)(e)(ii), SHPDA Rules and Regulations. Several of the hospitals presented evidence that the occupancy rate at their facility would decrease by five percent or more if Lloyd Noland constructs its new facility. SHPDA's decision to grant the CON to Lloyd Noland will thus have a detrimental effect on those hospitals. Therefore, those hospitals are persons aggrieved by SHPDA's decision herein.
In addition, Rule 410-1-1-.01(22) of SHPDA's Rules and Regulations provides that any "person directly affected" by a SHPDA decision on a CON may, for any reason, file a written request for a public hearing during the course of SHPDA's review. Rule 410-1-2-.01(10) defines "persons directly affected" to include: "health care facilities and health maintenance organizations located in the health service area in which the service is proposed to be offered or developed which provide services similar to the proposed services under review. . . ." Each of the hospitals here falls within this definition. Rule 410-1-7-.01(22) further provides that all "persons directly affected" may express their views of the proposal at the public hearing, may present evidence, and, if appearing in opposition to the proposal, will be requested to express their opposition. Each of the hospitals herein exercised its right to appear in opposition. In our view, SHPDA's decision to reject the arguments presented by Brookwood and the other hospitals was, in effect, a ruling adverse to the interests of Brookwood, and Brookwood thus became a person aggrieved by the SHPDA decision. Therefore, Brookwood obtained standing to challenge the decision pursuant to the AAPA.
 IV. Statutory and Procedural Issues
Having determined that Brookwood has standing, we turn to the other issues raised on appeal. In their briefs, Brookwood and the other appellees allege that SHPDA committed numerous procedural errors, as well as statutory violations, in its handling of this case. These allegations include (1) failure to make proper findings of fact as required by section41-22-16(b), Code 1975, of the AAPA; (2) failure to apply the doctrine of collateral estoppel and res judicata; (3) failure to obtain a majority vote of the entire Review Board; and (4) failure to comply with the Alabama Sunshine Act (section13A-14-2, Code 1975).
In its final order the circuit court found that SHPDA's decision did not violate any constitutional or statutory provision, was not "made upon unlawful procedure" and was not "affected by other error of law." Brookwood did not challenge these findings by way of postjudgment motions nor by way of appeal. Until recently we would have been precluded from addressing these issues raised by Brookwood because of their failure to file a cross-appeal. In McMillan, Ltd. v. WarriorDrilling Engineering Co., 512 So.2d 14 (Ala. 1986), however, our supreme court adopted the federal rule regarding cross-appeals and found that an appellee, without filing a cross-appeal, may offer in support of his judgment any argument supported by the record whether that argument was ignored by the circuit court or flatly rejected. In light of McMillan, we find the foregoing issues — excluding Brookwood's issue concerning SHPDA's failure to make findings of fact — to be properly presented for our review.
 Failure to Make Proper Findings of Fact
In support of its judgment Brookwood offers an alternate theory of reversal and asserts that SHPDA's failure to make proper findings of fact justifies affirmation of the circuit court's decision.
Section 41-22-16(b), Code 1975, provides the following: *Page 59 
 "Findings of fact, if set forth in a manner which is no more than mere tracking of the statutory language, shall be accompanied by a concise and explicit statement of the underlying facts of record which support the findings."
In its final order SHPDA merely tracked the statutory language of section 22-21-266, Code 1975. Section 41-22-16(b) is mandatory. SHPDA, therefore, erred in failing to make findings of fact. The proper remedy for this error, however, is remand to SHPDA rather than reversal of SHPDA's decision. §41-22-20(k), Code 1975.
As previously discussed, McMillan, supra, stands for the general proposition that an appellee, without filing a cross-appeal, may offer in support of his judgment any argument that is supported by the record. The key words here are "in support of his judgment." An appellee, without filing a cross-appeal, cannot "attack, in any respect, the decree entered below." United States v. American Railway Express,265 U.S. 425, 435-36, 44 S.Ct. 560, 564, 68 L.Ed. 1087 (1924) (footnote omitted). Furthermore:
 "[T]he appellee who does not file a cross-appeal may offer any argument preserved in the record in support of the judgment as rendered, but he cannot ask for more or offer to take less."
9 Moore's Federal Practice, § 204.11(3) at p. 450 (footnote omitted).
Brookwood's argument is an attempt to support the circuit court's reversal of SHPDA's decision on the merits by saying that the reversal of SHPDA's decision is proper because SHPDA failed to make the required findings of fact. Of course, SHPDA's decision was reversed on the merits, i.e. a lack of factual support for the award of a CON to Lloyd Noland, not for a procedural defect. Moreover, the failure to make findings of fact is not a reversible defect; it is merely a remandable matter for correction of the defect. § 41-22-20(k), Code 1975. Therefore, Brookwood's argument is not supportive of the circuit court's reversal of SHPDA's decision but, rather, a request for remandment to SHPDA for the findings of fact. Such a request is for something less than what Brookwood received, i.e. a reversal of SHPDA's order. Without a cross-appeal, such a request cannot be considered.
 Failure to Apply the Doctrines of Collateral Estoppel and Res Judicata
Brookwood asserts that the circuit court erred in failing to find that SHPDA's decision was precluded by the doctrines of collateral estoppel and res judicata. Brookwood contends that SHPDA was barred from making factual findings contrary to the facts found in the 1982 proceedings in which they denied the original six applicants a CON to build a hospital in the Riverchase area.
In addressing this issue the circuit court found the following:
 "Shelby Medical argues that . . . the board's denial of a certificate in the prior hearing is res judicata to this application. While the Court recognizes that the doctrine of res judicata applies to acts of administrative agencies (State v. Brooks, [255 Ala. 689] 53 So.2d 329
[1951]), it finds that there is lacking an identity of issues or of parties and, thus, res judicata does not apply."
Collateral estoppel will apply to administrative proceedings if:
 "(1) there is identity of the parties or their privies; (2) there is identity of issues; (3) the parties had an adequate opportunity to litigate the issues in the administrative proceeding; (4) the issues to be estopped were actually litigated and determined in the administrative proceeding; and (5) the findings on the issues to be estopped were necessary to the administrative decision."
Pantex Towing Corp. v. Glidewell, 763 F.2d 1241, 1245 (11th Cir. 1985).
In order to sustain a plea of res judicata, the following elements must be met: "(1) prior judgment rendered by court of competent jurisdiction; (2) prior judgment rendered on the merits; (3) parties to both suits substantially identical; and (4) same cause of action present in both suits." Wheeler v.First Alabama Bank, 364 So.2d 1190, 1199 (Ala. 1978). *Page 60 
Collateral estoppel and res judicata are two separate entities with two separate sets of rules. In order to sustain a plea in either one, however, two common elements must be proved. They are: the identity of parties and of issues. Here, as the foregoing summary of facts indicates, the parties to these actions were not the same, nor were they "substantially identical." The issues were somewhat similar in that the original applicants and Lloyd Noland were seeking to build a facility in the same area. The original applicants, seeking additional beds, were denied a CON because their applications were inconsistent with the State Health Plan. Lloyd Noland's application, on the other hand, was for one of relocation rather than for additional beds.
Lloyd Noland's action was not precluded by the doctrines of collateral estoppel or res judicata because there was no identity of parties and of issues.
 Failure to Obtain a Majority Vote of the Entire Review Board
Brookwood contends that SHPDA's decision is procedurally defective and therefore invalid because a majority of the nine-member board did not vote to approve the project.
Section 41-22-15, Code 1975, provides the following: "In a contested case, a majority of the officials of the agency who are to render the final order must be in accord for the decision of the agency to be a final decision."
Section 41-22-3(8), Code 1975, defines "quorum" in the following manner: "No less than a majority of the members of a multimember agency shall constitute a quorum authorized to act in the name of the agency, unless provided otherwise by statute."
Reading the above statutes in pari materia, we find that in order for a decision to be final a majority of a quorum must be in accord.
Here, six members — comprising a quorum of the nine member board — voted on the project. The vote was four to two in favor of Lloyd Noland. A majority of the quorum was in accord. We find no error.
 Failure to Comply with the Alabama Sunshine Act
Brookwood asserts that SHPDA's decision is procedurally defective and therefore invalid because the board's use of a secret written ballot violated the "Alabama Sunshine Act." § 13A-14-2, Code 1975.
Section 13A-14-2 provides in pertinent part the following:
 "(a) No executive or secret session shall be held . . . except, that executive or secret sessions may be held . . . when the character or good name of a woman or man is involved.
 "(b) Any person or persons violating any of the provisions of this section shall be guilty of a misdemeanor, and, upon conviction, shall be fined not less than $10.00 nor more than $500.00. Any person who remains in attendance upon any meeting . . . which is being held in secret or executive session shall be deemed guilty of violating the provisions of this section."
We find a discussion concerning whether the secret written ballot was in violation of the "Alabama Sunshine Act" to be unnecessary. Even if we were to find such a violation it would be of no avail to Brookwood. The remedy for a violation of the act is a criminal prosecution. "The act does not provide that action taken in violation thereof is void. If the legislature so intended the act could have been easily written to so provide." Ex parte Alabama Public Service Commission,376 So.2d 665, 667 (Ala. 1979).
After reviewing the alleged procedural and statutory errors, we agree with the circuit court and find that SHPDA's decision did not violate any statutory provision, was not "made upon unlawful procedure" and was not "affected by other error of law."
 V. Sufficiency of the Evidence
The remaining issue is whether SHPDA's decision to grant the CON was clearly erroneous in view of the reliable, *Page 61 
probative, and substantial evidence on the whole record. §41-22-20(k)(6), Code 1975 (1988 Cum.Supp.). The circuit court determined that SHPDA's decision was clearly erroneous. We must determine whether the circuit court erroneously substituted its judgment for that of the agency.
In order to grant a certificate of need, SHPDA must make five statutorily mandated findings pursuant to section 22-21-266, Code 1975. That statute provides:
 "No certificate of need for new inpatient facilities or services shall be issued unless the SHPDA makes each of the following findings:
 "(1) That the proposed facility or service is consistent with the latest approved revision of the appropriate state plan effective at the time the application was received by the state agency;
 "(2) That less costly, more efficient or more appropriate alternatives to such inpatient service are not available, and that the development of such alternatives has been studied and found not practicable;
 "(3) That existing inpatient facilities providing inpatient services similar to those proposed are being used in an appropriate and efficient manner consistent with community demands for services;
 "(4) That in the case of new construction, alternatives to new construction (e.g., modernization and sharing arrangement) have been considered and have been implemented to the maximum extent practicable; and
 "(5) That patients will experience serious problems in obtaining inpatient care of the type proposed in the absence of the proposed new service."
SHPDA's final ruling in this case merely tracked the statutory language of section 22-21-266. After a careful review of the record, we have determined that each of the findings made by SHPDA was supported by reliable, probative and substantial evidence. We will address each of the findings in turn.
First, SHPDA found that the facility proposed by Lloyd Noland is consistent with the State Health Plan. § 22-21-266(1), Code 1975 (1988 Cum.Supp.). The State Health Plan in effect at the time of SHPDA's decision forbade the addition of new hospital beds to an already over-bedded area. SHPDA and Lloyd Noland contend that while issuance of this CON permits new construction in an over-bedded area, it does not add new hospital beds. We agree. Lloyd Noland seeks to relocate 157 existing beds to a new facility. The State Health Plan is silent as to the relocation of beds.
The circuit court found, and Brookwood argues on appeal, that the difference between new beds and relocated beds in this case is merely one of semantics because the beds Lloyd Noland seeks to relocate are currently unstaffed "ghost beds." However, the issue of whether the beds were "new" or "relocated" was not for the circuit court to decide. Substantial evidence, indeed uncontroverted evidence, showed that, upon completion of the Cahaba Medical Center, Jefferson County would contain the same number of hospital beds as it did prior to construction of the Cahaba Medical Center. Thus, construction of this facility will not add new hospital beds to an already over-bedded area. Since the State Health Plan does not forbid the relocation of hospital beds, SHPDA's decision that this proposed facility is consistent with the State Health Plan is not clearly erroneous.
The second finding required for issuance of a CON to build a new in-patient facility is that less costly, more efficient, or more appropriate alternatives are not available and that development of such alternatives has been studied and found not practicable. § 22-21-266(2), Code 1975 (1988 Cum. Supp.). The circuit court found that "cost efficient and appropriate alternatives" are available in the area and are "readily accessible to the populace." Again, the circuit court substituted its judgment for SHPDA's judgment. Lloyd Noland presented evidence that it had studied several alternatives to its proposal, including a total renovation of its existing facility in Fairfield and a total relocation. The proposal submitted to SHPDA was the least costly alternative. Brookwood argues that the existing in-patient facilities in the area *Page 62 
provide less costly, more appropriate alternatives. However, there was evidence that the Cahaba Medical Center would provide the least expensive medical care of any of the hospitals involved. There was also evidence that Lloyd Noland's full-time staff of doctors would provide medical care to Medicare and Medicaid patients which the other hospitals might not accept. In addition, Lloyd Noland presented evidence that this project is the least costly alternative which assures its continued viability as a health care provider. Although Brookwood argues that such evidence should not be considered, and the circuit court apparently agreed, SHPDA asserts that Lloyd Noland's special status in the Fairfield community requires consideration of this evidence. If Lloyd Noland is forced to close its doors, there will be no "less costly, more efficient or more appropriate alternative" for the people of Fairfield. While we do not necessarily agree that the financial success of a medical facility is a proper factor for consideration in every CON case, we can find nothing in the statute to forbid it. We therefore cannot say that SHPDA's decision that less costly, more efficient, or more appropriate alternatives are not available was clearly erroneous.
As to the third required finding, the circuit court held that Lloyd Noland had submitted no proof that existing in-patient facilities providing similar services are being used "in an inappropriate or inefficient manner" consistent with community demands for services. The statute does not require such. In fact, it requires the opposite. § 22-21-266(3), Code 1975 (1988 Cum.Supp.). Before issuing a CON for new in-patient facilities, SHPDA must find that existing in-patient facilities providing similar services are being used in an "appropriate and efficient manner." Brookwood contends that because the hospitals in the area are currently operating at sixty to sixty-five percent occupancy rates and occupancy rates have declined since 1984, SHPDA's finding that area hospitals are being used in an appropriate and efficient manner was clearly erroneous. We disagree. High occupancy rates are not a sine quanon of an efficiently operated hospital. In fact, Brookwood itself stated in a letter to SHPDA that existing facilities in the area were being used in an appropriate and efficient manner, in spite of lower occupancy rates. Also, Lloyd Noland's attorney testified at the SHPDA hearing that construction of the new facility would not change occupancy rates in the area. Lloyd Noland presented additional evidence that the population of the proposed service area was rapidly expanding and that its relocation would help more efficiently meet the medical needs of the shifting populace. In light of such evidence, we again cannot say SHPDA's finding was clearly erroneous.
Neither can we say that SHPDA's finding that alternatives to new construction have been considered and implemented to the maximum extent practicable is clearly erroneous. §22-21-266(4), Code 1975 (1988 Cum.Supp.). Lloyd Noland proposed, and SHPDA approved, not only the construction of the Cahaba Medical Center but also the renovation and modernization of its existing facility. Modernization is one of the alternatives to new construction set out in the statute. The administrator of Lloyd Noland Hospital testified that Lloyd Noland had considered a complete renovation of its existing facility and found that project to be more expensive than partial renovation and relocation of some services. Brookwood contends that Lloyd Noland should have been required to study and implement sharing arrangements. We note that although the statute mentions sharing arrangements as an alternative to new construction it does so only by way of example. The statute requires only that "alternatives" to new construction, which may or may not include sharing arrangements, be considered.
The fifth and last finding SHPDA must make is that patients will experience serious problems in obtaining in-patient care of the type proposed in the absence of the proposed new service. § 22-21-266(5), Code 1975 (1988 Cum.Supp.). Lloyd Noland and SHPDA contend that this finding is not required in this case because the Cahaba Medical Center will not offer any "new service." Brookwood asserts that *Page 63 
since the Cahaba Medical Center is a "new institutional health service" as defined in sections 22-21-263(a)(1) and -263(a)(3), Code 1975 (1984 Cum.Supp.), this finding is required. We consider the point moot. SHPDA made a finding on the issue after the hearing. It cannot now reverse its position and assert that no finding should have been made. Instead, it must show that the finding was supported by substantial evidence.
The circuit court found that since three other hospitals within eleven miles of the proposed construction site offered services of the type proposed, SHPDA's finding that patients would experience serious problems in obtaining these services was clearly erroneous. We disagree. Geographic accessibility is not the only factor to be considered. The evidence that Lloyd Noland would accept certain Medicare and Medicaid patients which no other area hospital would accept makes Lloyd Noland economically accessible to patients who would experience serious problems obtaining care elsewhere. In addition, the circuit court merely substituted its judgment for that of SHPDA in determining that patients within a certain distance of a particular existing facility would not experience serious problems in obtaining the type of medical care offered by the new facility.
Several witnesses testified that the area in which Lloyd Noland proposed to build the new facility has experienced rapid population growth over the past few years without a corresponding increase of hospital beds in that area. Lloyd Noland presented evidence that, although Jefferson County as a whole is overbedded, the beds are unevenly distributed and, in many cases concentrated in small areas. Legal evidence thus supports SHPDA's decision as to the fifth required finding.
 VI. Conclusion
We hold that Brookwood did have standing to challenge SHPDA's decision to issue a CON to Lloyd Noland. We further hold that SHPDA's decision is supported by substantial evidence. Substantial evidence is such relevant evidence as a reasonable man might accept as adequate to support a conclusion.Sexton v. Tuscaloosa County Civil Service Board, 426 So.2d 432
(Ala.Civ.App. 1983). Substantial evidence supported each of SHPDA's findings made pursuant to section 22-21-266. Therefore, the issuance of the CON cannot be said to be clearly erroneous.
We reverse the circuit court's decision and remand this case to the circuit court for reinstatement of the SHPDA order.
The foregoing opinion was prepared by Retired Appellate Judge ROBERT P. BRADLEY while serving on active duty status as a judge of this court under the provisions of section12-18-10(e), Code 1975, and this opinion is hereby adopted as that of the court.
APPLICATION FOR REHEARING GRANTED; ORIGINAL OPINION WITHDRAWN; OPINION SUBSTITUTED. REVERSED AND REMANDED WITH INSTRUCTIONS.
All the Judges concur.